# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN STEVEN MOATS, | ) | |
| | ) | Civil Action No. 12 - 1331 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| LOUIS FOLINO, *Superintendent*, | ) | |
| *S.C.I. Greene* and THE ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

Petitioner, Brian Steven Moats (hereinafter referred to as "Moats" or "Petitioner"), a state prisoner, has petitioned the Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). For the reasons that follow, the Petition will be dismissed as untimely and, in the alternative, denied.

## I.      Factual Background and Procedural History

Petitioner pled guilty to third-degree murder on December 29, 2003, in connection with his role in a December 23, 2000 arson that resulted in the death of an occupant of the burned residence. In exchange, the Commonwealth dropped the arson and conspiracy to commit criminal homicide charges.

On January 14, 2004, Petitioner was sentenced to an aggregated term of 192 to 384 months imprisonment. He did not directly appeal.

On May 6, 2004, Petitioner filed his first petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. Counsel was appointed but later

filed a petition to withdraw pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1998) and

Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) (en banc).  On June 1, 2004, the

PCRA court denied counsel's petition to withdraw.  An evidentiary hearing was conducted on

June 25, 2004, and the PCRA court denied the petition by Opinion and Order entered on July 1,

2004.  (ECF No. 15-5.)  Petitioner appealed, and the Pennsylvania Superior Court affirmed in a

Memorandum filed on April 26, 2005.  (ECF No. 15-9.)  A Petition for Allowance of Appeal

was denied by the Pennsylvania Supreme Court on October 13, 2005.  (ECF No. 15-8.)

Petitioner filed subsequent PCRA petitions that were all dismissed by the PCRA court as

untimely.  Specifically, his second PCRA petition was dismissed on October 11, 2006, (ECF No.

15-11); his third PCRA petition was dismissed on May 30, 2008, (ECF No. 15-3); and his fourth

petition was dismissed on November 16, 2011, (ECF No. 15-7).  Petitioner appealed the

dismissal of his fourth PCRA petition, and the Pennsylvania Superior Court affirmed in a

Memorandum filed on June 8, 2012.  (ECF No. 15-2.)

Petitioner initiated the instant federal habeas proceedings on September 17, 2012.  (ECF

No. 1.)

## II.     Time Period for Filing Federal Habeas Corpus Petitions

This proceeding is governed by the federal habeas statute applicable to state prisoners, 28

U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.

No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").[1]  Pursuant to the AEDPA, Congress

imposed a one-year limitations period applicable to state prisoners, which provides as follows:

---

[1] Because Petitioner filed his federal habeas petition after the effective date of the AEDPA, the
Court must apply the standards set forth in the AEDPA to his claims for federal habeas relief.
See Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000) (citing Lindh v. Murphy, 521 U.S. 320,
336 (1997)).

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

The statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004), *cert denied*, 543 U.S. 1067 (2005). In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.

As to the first inquiry, the "trigger date" for AEDPA purposes is the date that Petitioner's judgment of sentence became final pursuant to section 2244(d)(1)(A).[2] Petitioner was sentenced on January 14, 2004, and he did not file a direct appeal. Thus, his judgment of sentence became final on February 13, 2004, upon the expiration of time to seek appellate review. *See* Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review). His one-year limitations period for filing a federal habeas petition started to run the following day.

As to the second inquiry, the one-year limitations period was tolled during the pendency of Petitioner's "properly filed" state post-conviction proceedings pursuant to section 2244(d)(2). Eighty-two (82) days of Petitioner's one-year limitations period expired before he filed his first PCRA petition on May 6, 2004, and the limitations period was tolled until those proceedings concluded on October 13, 2005, which was the date the Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal. When Petitioner's limitations period started to run again the following day, he had only 283 days remaining to file a timely federal habeas petition, or until July 23, 2006.[3] As noted above, Petitioner did not initiate these federal habeas proceedings until September 17, 2012. Thus, absent any more tolling from properly filed state court post-conviction proceedings, the instant Petition is clearly untimely.

---

[2] Petitioner does not assert that there was an impediment to filing his habeas petition which was caused by state action, that his petition involves a right which was newly recognized by the United States Supreme Court, or that there are new facts which could not have been previously discovered. *See* 28 U.S.C. § 2244(d)(1)(B)-(D). Therefore, the "trigger date" for all of his claims is the date his judgment of sentence became final.

[3] Because July 23, 2006 fell on a Sunday, Petitioner actually had until July 24, 2006 to file a timely federal habeas petition.

While Petitioner did file subsequent PCRA petitions, they were not filed until after his time for filing a timely federal habeas petition expired. Specifically, Petitioner did not file his second PCRA petition until September 14, 2006. Furthermore, all of these PCRA petitions were dismissed by the PCRA court as untimely under Pennsylvania's PCRA statute and therefore they were not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2). *See* Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2).") (internal quotation omitted); Merritt v. Blaine, 326 F.3d 157, 165 (3d Cir. 2003) (holding that untimely PCRA petition does not toll the federal limitations period even where the petitioner sought to pursue his PCRA petition under a statutory exception to the PCRA's time bar). Thus, absent the application of any equitable tolling, the instant Petition is clearly untimely.

Petitioner appears to argue that his Petition is not barred by the one-year limitations period contained in 28 U.S.C. § 2254(d) because of the United States Supreme Court's ruling in Martinez v. Ryan, 132 S. Ct. 1309 (2012). He does not, however, specify how <u>Martinez</u> is applicable to his case and why it should be considered in determining the timeliness of his Petition. In Martinez, the Supreme Court held that ineffectiveness of post-conviction counsel in failing to properly raise the ineffectiveness of trial counsel during "initial-review collateral proceedings" can be used to show cause for procedural default when said collateral proceedings were the first place the petitioner could raise such a claim. Id. at 1315-17. <u>Martinez</u> did not deal with AEDPA's statute of limitations, and <u>Martinez</u> does not provide a basis for equitable tolling of the statute of limitations. *See*, *e.g.*, Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) (holding "that the reasoning of the <u>Martinez</u> rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period"); <u>Vogt v. Coleman</u>, C.A. No. 08-530,

2012 WL 293081, at *4 (W.D. Pa. July 18, 2012) ("Martinez did not provide that post-conviction counsel's ineffectiveness could establish an exception to or equitable tolling of AEDPA's one-year statute of limitations for filing a federal habeas corpus petition."); Taulton v. Tritt, C.A. No. 14-3401, 2015 WL 745769, at *8 (E.D. Pa. Feb. 23, 2015) ("The Martinez decision does not implicate equitable tolling."); Shirey v. Giroux, C.A. No. 11-1693, 2014 WL 5825309, at *8 (M.D. Pa. Nov. 10, 2014).  Therefore, Martinez does not entitle Petitioner to any sort of equitable tolling, and not having demonstrated entitlement to equitable tolling by any other means, the Petition must be dismissed as untimely.  However, for the reasons that follow, the Petition is denied in the alternative.

### III.    Habeas Standard

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue.  *See* 28 U.S.C. § 2254(d) and (e).  In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d).  In Williams, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the State court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or (2) where the State court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States."  Id. at 404-05.  The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has

on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000) (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999) (*en banc*)). Moreover, the "unreasonable application" test is an objective one; "a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Jacobs v. Horn, 392 F.3d 92, 100 (3d Cir. 2005) (citation omitted). It is Petitioner's burden to prove the State court decision is either contrary to or an unreasonable application of clearly established federal law. *See* Matteo, 171 F.3d at 888; Werts, 228 F.3d at 197.

AEDPA also permits federal habeas relief where the State court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(d)(2) mandates the federal habeas court to assess whether the state court's determination was reasonable or unreasonable given that evidence. If the state court's decision based on such a determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is warranted. Within this overarching standard, of course, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision. Here, section 2254(e)(1) comes into play, instructing that the state court's

determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence.

**IV.    Claims**

**A.  Claims not subject to habeas review.**

In claims one and two, Petitioner complains of errors that were allegedly made in his state PCRA proceedings.  Specifically, in claim one he asserts that the Pennsylvania Superior Court misconstrued the question raised on appeal from the dismissal of his fourth PCRA petition. In claim two, Petitioner asserts that he was denied a meaningful opportunity to have his claims reviewed under the PCRA, and, for reasons beyond his control, the state court has never considered his claims in a full and fair hearing.

Federal courts have held that claims concerning errors in state post-conviction proceedings are simply not cognizable in a federal habeas proceeding.  *See* Word v. Lord, 648 F.3d 129, 131 (2d Cir. 2011) (holding that alleged errors in a postconviction proceeding are not grounds for § 2254 review and citing cases concluding same).  This is so because it is an attack on a proceeding collateral to the detention and not the detention itself.  *See* Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceedings does not enter into the habeas calculation . . . .  Federal habeas power is 'limited . . . to a determination of whether there has been an improper detention by virtue of the state court judgment.'").  Thus, claims one and two are not cognizable under § 2254 habeas review.

**B.  Claims regarding illegal sentence for failing to abide by terms of plea agreement.**

In claims three and five of the Petition, Petitioner claims that his sentence is illegal because neither the trial court nor the Commonwealth adhered to the agreed upon terms in the plea agreement. Specifically, Petitioner states that in exchange for his general plea of guilty to third degree murder, the Commonwealth agreed that it would not proceed on charges of arson and conspiracy to commit homicide and that the sentencing judge agreed to sentence him upon a Prior Record Score of 0 and an Offense Gravity Score of 14. At sentencing, however, Petitioner was sentenced upon a Prior Record Score of 5.

Petitioner raised similar claims in his first PCRA petition, albeit challenging his counsel's effectiveness in relation to his decision to plead guilty, but it was not until his subsequently filed PCRA petitions that Petitioner made the specific challenges he now makes in relation to his alleged unlawful sentence based on the terms of the plea agreement. The PCRA court dismissed those petitions for lack of jurisdiction after determining that they were untimely filed and that Petitioner failed to plead and prove a statutory exception to the PCRA's time-bar found in 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Thus, these claims are procedurally defaulted because Petitioner did not raise them in a procedurally correct manner in the state courts. *See* Coleman v. Thompson, 501 U.S. 722, 750 (1991) (the procedural default doctrine prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court declined to rule on the merits of the claim because it determined that the petitioner did not comply with a state procedural rule, and that rule is independent of the federal question and adequate to support the judgment).[4]

---

[4] State procedural grounds for denying a PCRA claim include, but are not limited to, the PCRA's timeliness requirement, 42 Pa.C.S. § 9545(b), failing to adequately develop the claim in one's briefing, Commonwealth v. Bracey, 795 A.2d 935, 940 n. 4 (Pa. 2001); Pa. R.A.P. 2116, 2119(a), and presenting claim on appeal without having presented it to the lower court,

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: (1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law;[5] or (2) failure to consider the claims will result in a "fundamental miscarriage of justice."[6] Coleman, 501 U.S. at 750; Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995). Petitioner has neither argued nor demonstrated either exception to the procedural default doctrine.

Nevertheless, despite the fact that they are procedurally defaulted, these claims are without merit. As explained by the PCRA court in response to Petitioner's fourth PCRA petition, Petitioner's claims about his sentence are incorrect.

---

Commonwealth v. Wharton, 811 A.2d 978, 990 (Pa. 2002); Pa. R.A.P. 302(a). The state court's decision in this case was both "independent" and "adequate". *See* Pettus v. Colons, C.A. No. 10-951, 2015 WL 1444669, at *10 (W.D. Pa. Mar. 30, 2015) ("PCRA statute of limitations is both adequate and independent").

[5] To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494.

[6] Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. This exception to the procedural default doctrine is based on the principle that, in certain circumstances, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" Carrier, 477 U.S. at 495 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)). The "prototypical example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant. Sawyer v. Whitley, 505 U.S. 333, 340 (1992). In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts.

. . . Petitioner repeatedly and erroneously claims that his sentence was unlawful and that Judge Capuzzi did not abide by the agreed-upon terms of the plea agreement. What Petitioner repeatedly fails to remember and accept is that Petitioner entered a general plea, not a plea bargain. (Plea Proceedings transcript, pp. 3, 6.) Petitioner affirmed the same at his [first] PCRA Proceedings. (*See* PCRA Proceedings transcript, p. 7.) As Judge Capuzzi stated, and as the Petitioner understood, the Court was not bound by the sentence that Petitioner's co-defendant received. *Id*. at 16-17. There were no agreed-upon "terms" to Petitioner's general plea, and the Court was not bound by whatever misconceptions Petitioner held.

Petitioner, relative to this unlawful sentence claim, repeatedly insists that Judge Capuzzi agreed to sentence him upon a Prior Record Score of 0 and an Offense Gravity Score of 14. This was discussed at the Plea Proceedings. *Id*. at 15-16. However, Petitioner conveniently omitted his prior record in the State of West Virginia. *Id*. at 45, 49-50. Petitioner told Attorney Zerega that "he didn't think they'd find them." *Id*. at 50. Of course, after Petitioner's prior record was discovered, his Prior Record Score was adjusted to 5. (*See* Sentence Proceedings, p. 4.)

(ECF No. 15-17 at pp.2-3.) There is no need for additional explanation for why Petitioner's

claims about his sentence are incorrect. He is not entitled to habeas relief on these claims.

## C. **Ineffective assistance of counsel claims.**

Petitioner raises several claims of ineffective assistance of counsel. Ineffective assistance

of counsel claims are "governed by the two-prong test set forth in Strickland v. Washington, 466

U.S. 668 (1984)." Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith,

539 U.S. 510, 521 (2003)). Under Strickland, a habeas petitioner must demonstrate that: (1)

counsel's representation fell below an objective standard of reasonableness; and (2) there is a

reasonable probability that, but for counsel's error, the result would have been different. 466

U.S. at 687. For the deficient performance prong, "[t]he proper measure of attorney performance

remains simply reasonableness under prevailing professional norms." Id. at 688. To establish

prejudice, "[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

In claims four and six of the Petition, Petitioner alleges the following claims of ineffective assistance of counsel with respect to his trial counsel, Dianne Zerega: (1) failure to meaningfully consult with him before he pled guilty; (2) failure to investigate his case; (3) failure to petition the court for funds to hire an investigator; (4) failure to file pre-trial motions, specifically a motion to suppress evidence; (5) failure to inform him that he would receive a larger sentence based on evidence presented at sentencing; and (6) failure to file a motion to withdraw his guilty plea.

Only the first and second of the aforementioned allegations of ineffective assistance against Ms. Zerega were raised by Petitioner in his first, and only timely, PCRA petition. The PCRA court addressed these allegations as follows:

> Petitioner admits that counsel, Dianne H. Zerega, Esquire, spent one and one-half hours talking with him prior to his plea, discussing the case and his options with him. "[I]t is well-settled that, by itself, the amount of time an attorney spends consulting with his client before trial is not a legitimate basis for inferring the total extent of counsel's pre-trial preparation, much less the adequacy of counsel's preparation." [FN1] *Commonwealth v. Mason*, 559 Pa. 500, 741 A.2d 708 (1999).

> > [FN1]  The Court notes that counsel credibly stated that, in addition to personally meeting with Petitioner, she prepared for the preliminary hearing, conducted research and met with the District Attorney more than once on Petitioner's behalf. *PCRA Proceedings*, pp. 40-41.

> Instantly, Petitioner admits that he would still have pleaded guilty even if counsel had spent more time with him, *PCRA Proceedings of June 25, 2004*, pp. 9-10, but he is not happy with the "deal" he got, suggesting that "maybe" if counsel had negotiated longer with the District Attorney, a better plea offer would have been tendered. The record reflects that Petitioner was the recipient of a very fair plea bargain, although counsel was not able to convince the District Attorney to offer him a fixed term of sentence. (*Id.*, p. 41) The decision to offer any "deal" is within the District Attorney's discretion; Petitioner has no constitutional right

to any plea bargain arrangement. *Commonwealth v. McElroy*, 445 Pa.Super. 336, 665 A.2d 813 (1995). Thus, counsel cannot be ineffective for failing to secure a "better" one, regardless of the amount of time spent trying to do so.

(ECF No. 15-5 at p.2.) In affirming the PCRA court on appeal with respect to these allegations, the Pennsylvania Superior Court also found that Petitioner failed to demonstrate any prejudice as a result of counsel discussing the case with him for only 1½ hours because he did not "indicate what issues [Ms. Zerega] could have raised or what beneficial information [s]he could have uncovered upon further consideration."[7] (ECF No. 15-9 at pp.3-4.)

In order to obtain habeas relief, Petitioner must demonstrate that the Pennsylvania Superior Court's decision is either "contrary to, or involves an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented". 28 U.S.C. § 2254(d). What a habeas petitioner must show to meet this extremely deferential standard is set forth above in section III of this Opinion.

The Pennsylvania Superior Court's decision in this case was not "contrary to" clearly established Federal law because (1) the Pennsylvania Superior Court decided Petitioner's claims of ineffective assistance of counsel under a standard that is essentially the same as the Strickland standard, and (2) did not reach a different result from that of the United States Supreme Court on a set of materially indistinguishable facts. Additionally, the Pennsylvania Superior Court's decision was not an "unreasonable application" of clearly established Federal law because it reasonably applied the correct governing legal rule for ineffective assistance of counsel claims to

---

[7] Petitioner now changes his story. He claims that Ms. Zerega met with him for "a mere minute or two" on two occasions prior to his proceedings. He claims that, in total, Ms. Zerega met with him for approximately six minutes. (ECF No. 5 at p.19.) The Court notes that this is different from what he testified to in his PCRA hearing, which was that Ms. Zerega met with him at the jail for one and a half hours. (ECF No. 15-19 at pp.7-8.)

the facts of Petitioner's case.  Finally, the Pennsylvania Superior Court's decision was

reasonable given the evidence presented in Petitioner's PCRA proceedings.  Thus, these claims

do not entitled Petitioner to habeas relief.

Petitioner's remaining ineffective assistance of counsel claims against Ms. Zerega are

unexhausted and, at this point, procedurally defaulted.  Nevertheless, even under a *de novo*

standard of review, these remaining allegations of ineffectiveness are not supported by the

record.  For example, in Petitioner's fifth allegation of ineffective assistance he alleges that Ms.

Zerega failed to inform him that he could receive a larger sentence based on evidence that was

presented at sentencing, and in his sixth allegation of ineffective assistance he states that Ms.

Zerega failed to file a motion to withdraw his guilty plea.  However, according to a letter written

by Ms. Zerega on January 28, 2004, which was in response to Petitioner's *pro se* motion for a

sentence reduction, Ms. Zerega stated the following:

> Initially, when you informed me that you had no prior convictions except a
> Driving Under Suspension, I told you it was possible that you would get a similar
> sentence [as your co-defendant], but it was also possible that you could get much
> more jail time in your sentence.
>
> On learning that you actually had an extensive prior record, I immediately
> reviewed the guideline range.  I further expressed my concern that the court might
> sentence you to the high end of your guideline range based on your extensive
> prior history.
>
> With your prior record score being as high as it is, the court sentenced you to the
> minimum amount of time possible under the guidelines.  The court did cut you a
> significant break when he sentenced you to the lowest number of months under
> the guidelines.
>
> At the time of your sentencing, I also asked if you wanted to withdraw your plea
> given the amount of time you were looking at, you stated you wanted the plea
> bargain.

14

As your statements in your motion are without any basis in fact, I cannot present them to the court; to do so would be to suborn an unsworn falsification and the potential of perjured testimony.

(ECF No. 15-7 at p.26.) These statements by Ms. Zerega are also supported by Petitioner's own testimony at his PCRA hearing; specifically, he testified that he was asked by Ms. Zerega whether he wanted to withdraw his plea at the time of sentencing and told her that he did not want to do so. (ECF No. 15-19 at p.34.) Based on Petitioner's testimony at the PCRA hearing, his fifth and sixth claims of ineffectiveness against Ms. Zerega are not only without merit but also outright false.

Additionally, Petitioner has not met his burden with respect to his third allegation of ineffective assistance against Ms. Zerega, which is that she failed to petition the court for funds to hire an investigator, and also Petitioner's fourth allegation, which is that she failed to file pre-trial motions, specifically a motion to suppress his confession, which he claims was coerced and obtained in violation of his Miranda rights. First, there is no proof relative to these claims in the state court record. Other than his bald assertion in his Petition, there is no evidence in the record that Petitioner's confession was coerced or that he wished to file a motion to suppress it on that basis. Moreover, Petitioner does not state what exculpatory information an investigator would have obtained that would have been relevant to the entry of his guilty plea or caused the court to sentence him differently. Without such evidence Petitioner has failed to meet his burden of proof relative to these claims of ineffective assistance.

In claims seven and eight of the Petition, Petitioner raises the following allegations of ineffective assistance of counsel with respect to his appointed PCRA counsel, Jeffrey Proden, and his appointed PCRA appellate counsel, Mark Mehalov: (1) failure to properly review his case (against both attorneys); (2) Mr. Proden's failure to file an amended PCRA petition to

include claims of invalid plea, breach of the plea agreement, procedurally defaulted sentence and trial counsel's ineffectiveness; (3) Mr. Mehalov's failure to raise on appeal pre-trial counsel's ineffectiveness and Mr. Proden's ineffectiveness in failing to file an amended PCRA petition raising the aforementioned issues; and (4) Mr. Mehalov's failure to raise on appeal the issues that Mr. Proden failed to raise in an amended PCRA petition.

Petitioner challenged his attorneys' effectiveness, including that of Mr. Proden and Mr. Mehalov, in his fourth PCRA petition, which, although untimely filed, the PCRA court addressed in an Opinion stating, "Petitioner had the benefit of three educated and reputable attorneys, who, in turn, assisted Petitioner to the best of their ability and as much as was allowable by law . . . Petitioner cannot claim that he was not afforded representation or meaningful review of his claims." (ECF No. 15-17 at p.2.)

Petitioner's claims of ineffective assistance of PCRA counsel and PCRA appellate counsel may be addressed summarily. Petitioner did not have a federal constitutional right to counsel during his state post-conviction proceeding, Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), and, therefore, cannot receive habeas relief on a claim that PCRA counsel were ineffective. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). *See also* Coleman v. Thompson, 501 U.S. 722, 752-53 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings.") Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. Accordingly, any claims of PCRA counsel or PCRA appellate counsel's ineffectiveness are simply not cognizable grounds for relief in federal habeas proceedings.

Despite the above rule of law, the United States Supreme Court has recently held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of trial." Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012). However, the Martinez exception applies only to claims of ineffective assistance of trial counsel where the errors or absence of post-conviction counsel caused a default of those claims at the initial-review post-conviction proceeding. Id. at 1318. Here, there is no indication that Petitioner has raised his claims of ineffective assistance of PCRA counsel to excuse the procedural default of any ineffective assistance of trial counsel claims. Therefore, Martinez has no application to these claims.[8]

Nevertheless, despite his attempts to do so, Petitioner has not demonstrated that either counsel was ineffective in the manner alleged.

**D. Cumulative effect of errors.**

Petitioner's final claim, claim nine, is that the cumulative effect of multiple errors of all counsel denied him his right to due process. The Third Circuit Court of Appeals has recognized that "a cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible" to determine whether together "they had a substantial and injurious effect or influence in determining the jury's verdict." Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007); *see also* Collins v. Sec'y of Pa. Dep't of Corrs., 742 F.3d 528, 542 (3d Cir. 2014) ("The cumulative error doctrine allows a petitioner to present a standalone

---

[8] It is noted that the majority of Petitioner's ineffective assistance claims raised against his trial counsel, Ms. Zerega, are procedurally defaulted. Even though Petitioner makes no argument in support of cause to excuse his default of those claims, whether he can do so under Martinez is irrelevant since the Court has already undertaken a merits review of those defaulted ineffective assistance claims against Ms. Zerega.

claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process.")

A claim of cumulative error must be presented to the state courts, for exhaustion of state remedies, before it may provide a basis for federal habeas relief. *See* Collins, 742 F.3d at 543 (joining those courts that have held that a claim of cumulative error is subject to the requirement of exhaustion of state remedies) While Petitioner states that he raised his cumulative error claim in his PCRA petition, he did not raise it in his only PCRA petition that was timely filed. Therefore, Petitioner's cumulative error claim was not exhausted in state court and it is now procedurally defaulted.

However, cumulative error review is simply not needed in the present case because no errors have been identified, much less multiple errors that cumulatively would have resulted in actual prejudice sufficient enough to undermine the reliability of Petitioner's plea. Moreover, Petitioner has not demonstrated actual prejudice even considering all of the alleged violations in the cumulative.

For the foregoing reasons, the Petition is denied in the alternative.

V. **Certificate of Appealability**

Section 102 of the AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Petitioner has not made a substantial showing of the denial of a constitutional right or shown that jurists of reason would disagree that his habeas petition was untimely filed. *See*, *e.g.*, Slack v. McDaniel, 529 U.S. 473 (2000) (explaining standard for grant of a certificate of appealability where court does not

address petition on the merits but on some procedural ground).  Accordingly, the Court will not

grant a certificate of appealability.  A separate Order will issue.

Dated:  November 30, 2015.


/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge


cc:  Brian Steven Moats
     FR-3744
     SCI Greene
     175 Progress Drive
     Waynesburg, PA  15370

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN STEVEN MOATS,         )
                                    )       Civil Action No. 12 - 1331
                Petitioner,   )
                                    )
                      v.           )       Magistrate Judge Lisa Pupo Lenihan
                                    )
LOUIS FOLINO, *Superintendent* and  )
THE ATTORNEY GENERAL OF    )
THE STATE OF PENNSYLVANIA,   )
                                    )
             Respondents.  )

## ORDER

**AND NOW**, this 30th day of November, 2015.

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 4) is **DISMISSED** as untimely and, in the alternative, **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge